UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>PALI HOLDINGS, INC.,<br><br>        Debtor. | Chapter 7 Case<br><br>Case No. 10-11727 (REG) |
| YANN GERON, Chapter 7 Trustee of the Estate of Pali Holdings, Inc.,<br><br>        Plaintiff,<br><br>    against<br><br>DAVID PEEBLER,<br><br>        Defendant. | Adversary Proceeding<br><br>Case No. 11-02912 (REG) |

## MEMORANDUM DECISION RE AWARD OF PREJUDGMENT INTEREST

A P P E A R A N C E S:

FOX ROTHSCHILD LLP
*Counsel for Plaintiff Yann Geron,*
 *Chapter 7 Trustee*
100 Park Avenue, 15th Floor
New York, New York 10017
By: Oksana Wright, Esq.

LAW OFFICE OF IRA R. ABEL
*Co-Counsel for Defendant David Peebler*
520 Eighth Avenue, Suite 2001
New York, NY 10018
By: Ira R. Abel, Esq.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

After review of the parties' letters with respect to the proper computation of prejudgment interest, I have signed the judgment in this adversary proceeding, having determined that I should award prejudgment interest at the contract rate of 8% for the entirety of the relevant time period. The postjudgment interest rate, as provided under 28 U.S.C. § 1961, will apply only to postjudgment interest. The bases for my determination follow.

Familiarity with the underlying facts, set forth in full in my earlier decision,[1] is presumed.

The parties differ with respect to whether prejudgment interest should be awarded—and if so, in what amount—in three respects. First, Peebler contends that the award of prejudgment interest is a matter for the discretion of the court, and need not comply with the parties' contract or the requirements of the New York CPLR. Second, Peebler contends that "the Trustee will be amply compensated for the actual damages to the debtor's estate regardless of any interest granted"; that Peebler was "actively wronged by the debtor"; and that "there is no remedial purpose to a collection action"—all to argue that no interest should be awarded at all. Third, Peebler disagrees with the Trustee's contentions, premised on Judge Gonzalez' decision in *RMM Records*,[2] and Judge Bernstein's decision in *Best Payphones*,[3] that interest should run at the contract

---

[1] See *Geron v. Peebler (In re Pali Holdings, Inc.)*, --- B.R. ---, 2013 Bankr. LEXIS 1151, 2013 WL 1197670 (Bankr. S.D.N.Y. Mar. 25, 2013).

[2] *RMM Records & Video Corp. v. Universal Music & Video Distribution, Corp.*, 372 B.R. 619 (Bankr. S.D.N.Y. 2007) (Gonzalez, J.) ("***RMM Records***").

[3] *In re Best Payphones, Inc.*, 2003 Bankr. LEXIS 180, 2003 WL 1089525 (Bankr. S.D.N.Y. Mar. 10, 2003) (Bernstein, C.J.) ("***Best Payphones***").

1

rate (of 8%) until payment on the note was first due, and thereafter at the higher 9% rate prescribed under the New York CPLR.

*Prejudgment Interest Discretionary with the Court?*

Citing the Second Circuit's decision in *UNUM Life*,[4] and my decision in *Ames-Unical*,[5] Peebler argues that the award of prejudgment interest here is discretionary. Thus, Peebler argues, I should not feel bound to award interest based on either the amount provided for under the note or under the CPLR.

Peebler is correct that the decisions in *UNUM Life* and *Ames-Unical* held, in the context of the types of cases then before them,[6] that the award of prejudgment interest was discretionary. And I held likewise once again, in a later decision, *Ames-Cellmark*,[7] not cited by Peebler, which relied heavily on *UNUM Life* and *Ames-Unical*. But each of those cases involved claims under federal law.[8] Importantly also, none involved a suit on a cause of action where the underlying right sued upon included a contractual entitlement to interest, or where the award of prejudgment interest was in any way obvious.

Here the Trustee's claims are of a hybrid nature. They are asserted under section 542 of the Bankruptcy Code, which is likewise a federal statute. And the amount of principal to be turned over is obvious. But the exact amount of the remainder to which

---

[4]  *Jones v. UNUM Life Ins. Co.,* 223 F.3d 130 (2d Cir. 2000) ("***UNUM Life***").

[5]  *Ames Merchandising Corp. v. Unical Enterprises, Inc. (In re Ames Dept. Stores),* 2010 Bankr. LEXIS 5115, 2010 WL 6052849 (Bankr. S.D.N.Y. Sept. 10, 2010) (Gerber, J.) ("***Ames-Unical***").

[6]  *See UNUM Life*, 223 F.3d at 139 ("In a suit to enforce a right under ERISA, the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court."); *Ames-Unical*, 2010 Bankr. LEXIS 5115, at *3, 2010 WL 6052849, at *2 (holding likewise in preference action).

[7]  *Ames Merchandising Corp. v. Cellmark Paper Inc. (In re Ames Dept. Stores),* 450 B.R. 24 (Bankr. S.D.N.Y. 2011) (Gerber, J.) ("***Ames-Cellmark***").

[8]  *UNUM Life* involved claims under ERISA, and *Ames-Unical* and *Ames-Cellmark* were preference actions. Another case holding similarly, *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F.Supp.2d 585, 606 (S.D.N.Y. 2010) (Sand, J.), involved claims for contempt in a federal trademark infringement action.

2

the estate is entitled—in contrast to the estate's underlying right to turnover—rests on the terms of the promissory note, which is to be enforced in accordance with its contractual terms. The two decisions on which the Trustee relies—*RMM Records* and *Best Payphones*—did not speak in terms of applying judicial discretion, and instead awarded interest based on the terms of the underlying contractual obligations and their reading of the underlying law. But neither involved claims under section 542.

Even though the claims here are asserted under section 542, I have substantial doubt, by reason of the hybrid nature of the Trustee's claims, that I can disregard the contractual terms of the note when deciding the extent to which I should award prejudgment interest. Analytically, when parties have already agreed upon a rate representing the time value of money, that is very hard to ignore. But ultimately I do not need to decide this issue. For assuming, *arguendo*, that I can decide the issue of interest entitlement in my discretion, I surely can be informed, in the exercise of my discretion, by the Trustee's underlying legal entitlement.[9] Here, whether I consider and then apply the Trustee's legal entitlement, or award interest in my discretion to do what I think is fair, I come to the same result.

---

[9] That is particularly so since, as stated in *UNUM Life* (and repeated in *Ames-Unical* and *Ames-Cellmark*):

> In exercising such discretion, the court is to take into consideration "(i) *the need to fully compensate the wronged party for actual damages suffered*, (ii) *considerations of fairness and the relative equities of the award*, (iii) the remedial purpose of the statute involved, and/or (iv) *such other general principles as are deemed relevant by the court*."

223 F.3d at 139 (emphasis added); *see also Ames-Unical*, 2010 Bankr. LEXIS 5115, at *3, 2010 WL 6052849, at *1 (same); *Ames-Cellmark*, 450 B.R. at 35 (same).

Awarding prejudgment interest based on heavy reliance on the terms of the note is also appropriate because as I noted in *Ames-Cellmark*, in cases where a grant of prejudgment interest is discretionary, "it has been held in this district that absent a sound reason to deny it, it should be awarded." 450 B.R. at 35 & n. 55 (citing *Ames-Unical* and many other cases).

3

I thus conclude that, either way, I here can, and should, base my award of prejudgment interest on what the law would otherwise require.

*No Interest Due at All?*

Peebler's second contention is much easier. His contentions that he was somehow wronged by Pali were rejected on summary judgment, and, even if true, would not go to the Trustee's entitlement to interest on the note. That is a function of what the Pali estate and Peebler agreed to, and the extent, if any, to which the CPLR would trump that. The Trustee's interest entitlement is not affected in any way by Peebler's grievances against the Pali estate.

Moreover, there was no evidence submitted suggesting that Peebler was wronged in any way. The contrary is true. Peebler wronged the Pali estate when he failed to make payment on the note. And he wronged the Pali estate again when he raised frivolous defenses to the Trustee's action. I haven't awarded sanctions for the latter, and have no intent to do so, but by the same token see no duty to reward Peebler for his conduct to date.

*Rate at Which Prejudgment Interest Accrues*

Peebler's note provides, in relevant part, that he promises to pay back the $105,000 principal "together with simple interest thereon from the date hereof at the rate of 8 percent (8%) per annum."[10] While the note states the date when interest runs "from," it does not state, however, the date interest runs "to." The note further states, in relevant part (though with language that does not definitively decide that question):

> Accrued interest shall be payable monthly on the
> first day of each calendar month during the term of

---

[10]  Note at 1 (Trustee's Br. Exh. 4).

4

> this Note commencing on June 30, 2007, in the amount of $700, and continuing thereafter in the amount of $700 on the first day of each successive month.  The outstanding principal balance together with accrued interest shall be due and payable on _____.[11]

The Trustee argues, with some force (by analogy to the substantively identical note executed by another Pali employee, Ross McMeekin, where the blank for the maturity date *was* filled in), that the parties intended that the note would have a 5-year term, and thus be due and payable on June 30, 2012.  And I agree with the Trustee that New York law governs its construction, and thus that I should look to New York law to determine the prejudgment interest to award.  But while I recognize, as the Trustee argues, that CPLR § 5004 provides for a 9% rate for pre-judgment interest,[12] and that CPLR § 5001 makes it available in cases involving "a breach of performance of a contract,"[13] I think it is more consistent with giving the Pali estate the benefit of its bargain, less arbitrary,[14] and thus fairer to both the Pali estate and Peebler to apply the 8% contracted-for interest rate all the way through to the date of entry of judgment.

The starting point for the analysis is the point made by Judge Bernstein in *Best Payphones*,[15] and followed by Judge Gonzalez in *RMM Records*,[16] that a litigant may

---

[11]   *Id.* ¶ 1.1. (blank in original).

[12]   CPLR 5004 provides, in full:

> Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute.

[13]   CPLR 5001 provides, in relevant part:

> (a) Actions in which recoverable. Interest shall be recovered upon a sum awarded because of a breach of performance of a contract….

[14]   The New York CPLR's 9% prejudgment interest rate applies irrespective of prevailing interest rates, and investment risk.

[15]   *See* 2003 Bankr. LEXIS 180, at *19, 2003 WL 1089525, at *5.

[16]   *See* 372 B.R. at 620-21.

5

recover prejudgment interest in an action based on breach of contract. In *RMM Records*, Judge Gonzalez recognized that:

> Although 28 U.S.C.A. § 1961 explicitly governs the rate and accrual of postjudgment interest, no federal statute governs the application of interest prejudgment and the determination is entrusted to the trial court judge. When a federal court judgment is based on a state law claim, courts have looked to state law to determine the propriety of prejudgment interest on recovery.[17]

New York's CPLR § 5004 provides for a 9% rate, but "[t]he parties may nevertheless agree to a different pre-judgment interest rate … and if they do, the contract rate, rather than the C.P.L.R. rate, will apply."[18] Thus, when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest trumps the rate provided under the CPLR.[19]

The issue here, as it was in *Best Payphones* and *RMM Records*, is whether under the particular contractual language before the court, the contract did so provide. In *Best Payphones*, on the language there before him (which included an express default interest rate), Judge Bernstein concluded that the contractual rate (as contrasted to the CPLR rate) applied until the promisee was paid.[20] In *RMM Records*, on the language there before him (which did not have an express default interest rate, and where the CPLR rate was

---

[17]   *Id.* at 621 n.2 (citation omitted).

[18]   *Best Payphones*, 2003 Bankr. LEXIS 180, at *17, 2003 WL 1089525, at *5.

[19]   *See Citibank, N.A. v. Liebowitz,* 110 A.D.2d 615, 615, 487 N.Y.S.2d 368, 369 (2d Dep't 1985) ("***Liebowitz***") ("It is well settled that when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in CPLR 5004, governs until payment of the principal or until the contract is merged in a judgment."); *European American Bank v. Peddlers Pond Holding Corp.,* 185 A.D.2d 805, 586 N.Y.S.2d 637 (2d Dep't 1992) ("***Peddlers Pond***") ("It is well established that when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the statutory rate set forth in CPLR 5004, governs until the payment of the principal or until the contract is merged into a judgment."); *RMM Records*, 372 B.R. at 621.

[20]   *See Best Payphones*, 2003 Bankr. LEXIS 180, at *19, 2003 WL 1089525, at *6.

6

ultimately used as a proxy for such, distinguishing *Best Payphones* on that basis), Judge Gonzalez reached the opposite result.[21] Judge Gonzalez concluded:

> The Court finds that the Note does not manifest an agreement between the parties that the contractual interest rate of 5% would continue beyond the Note's maturity date until Universal repaid the Note. In the absence of such a provision, New York's prejudgment statutory rate of 9% should apply for the period from November 1, 2003 [the note's maturity date] through the date of the judgment's entry.[22]

The appropriate test, then, as distilled from the New York cases, is whether the parties contracted for the original interest rate to run through the *date of maturity* of the note, on the one hand, or through the *date of payment*, on the other. But that test also requires the Court to rule in instances when the note is silent on the issue.

The Trustee is right in asserting[23] that both here and in *RMM Records*, the note did not provide a separate default interest rate. But looking at the totality of the very badly drafted language in the note here, and with the failure of the parties even to fill in the date of maturity of the note, I think the better reading of the note is that the parties intended to provide for interest to be paid at the contract rate until the principal was paid.[24] If they wanted to provide otherwise, they could have provided either for a default interest rate, or for interest to accrue at the contract rate only until maturity, with a different rate, as provided under the CPLR or by some other means, to apply thereafter.

---

[21]     *See RMM Records*, 372 B.R. at 622-23.

[22]     *Id.* at 623.

[23]     *See* Trustee 4/5/2013 Ltr. at 2.

[24]     *See* Note at 1 (Peebler "hereby promises to pay … the principal sum of One Hundred and five thousand Dollars ($105,000) together with simple interest thereon from the date hereof at the rate of 8 percent (8%) per annum."); *id.* at ¶ 1.1 (interest had to be paid "continuing thereafter" at the rate of $700 per month).

Thus I conclude that I should award interest at the contracted-for 8% rate all the way through. That is hardly unfair to the Trustee, and Peebler should not be heard to complain either, as that was his agreement as to the time value of the money he promised to pay.

I accept the Trustee's computation of interest of $21,000 (30 months at $700 per month) for the period from January 1, 2010 through June 30, 2012. But as I conclude that the interest for the next 9 months should be at the rate of 8% instead of 9%, I award interest of $6,300 (9 months at $700 per month) instead of the Trustee's recommended $7,875 (10 months at $787.50) for that 9 month period through April 1, 2013.[25] Finally, since at an 8% interest rate, interest continued to accrue past April 1 at the rate of $23.33 per day ($700 per month divided by 30), I award an additional $583.25 for the 25 days of additional interest from April 1 through the date of entry of judgment.

Thus prejudgment interest will be awarded in favor of the Trustee in the amount of $27,883.25.

Dated: New York, New York       *s/Robert E. Gerber*
       April 25, 2013            United States Bankruptcy Judge

---

[25] The Trustee's computation was based on 10 months for the period from July 1, 2012 until April 1, 2013. Trustee 4/5/2013 Ltr. at 3. However, my count reveals that there are only 9 months in that time period. For that reason, my computation is based on 9 months for the period between July 1, 2012 and April 1, 2013.

8